JAN 2 2003

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CLERK U.S. DISTRICT COURT

LYNDA WILSON, et al.,

Plaintiffs,

vs.

SUNDSTRAND CORPORATION, a corporation,

Defendant.

Case No. 99 C 6944

Judge Kennelly

FILED
JAN 27 2003
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DEFENDANT HAMILTON SUNDSTRAND CORPORATION'S MOTION TO BAR THE TESTIMONY OF GLENN HASKINS AS SANCTION FOR IMPROPER SPEAKING OBJECTIONS**

NOW COMES defendant, HAMILTON SUNDSTRAND CORPORATION, improperly sued as Sundstrand Corporation, by and through its attorney WILLIAM F. DEYOUNG, and moves this Honorable Court to bar the testimony of Glenn Haskins on the areas in which he was improperly coached by plaintiffs' counsel. In support of this Motion, Hamilton Sundstrand Corporation states as follows:

## I. Introduction

This case arises out of the crash of Garuda Indonesia Flight GA-152. There is a motion currently pending before the Court, similar to the one presented here, pertaining to the deposition of Debbie Pederslie. Plaintiffs claim the objections made by Mr. DeYoung in that deposition were improper and seeks this Court to deem certain facts admitted as a result. If the Court is inclined to consider plaintiffs' motion, the defendant respectfully requests this Court to consider the

248

same motion presented here as to the deposition of Glenn Haskins and the improper speaking objections made by plaintiffs' counsel therein.

Glenn Haskins was named as an expert witness as to liability issues by plaintiffs. Mr. Haskins was deposed on January 11, 2003. During Mr. Haskins' deposition, plaintiffs' counsel, Floyd Wisner and John Hoff, made several speaking objections which influenced and changed Mr. Haskins' testimony, specifically in regard to the interpretation of Mr. Haskins' own report.

**Argument**

Mr. Haskins appeared for deposition accompanied by two attorneys, Floyd Wisner and John Hoff. During the deposition Mr. DeYoung questioned Mr. Haskins about why Mr. Haskins thought the GPWS alert did not sound when it should have. During this questioning, both Mr. Wisner and Mr. Hoff improperly interjected with speaking objections. These objections went far beyond the limited objections allowed under the Federal Rules. In fact, they were not really objections at all, but rather, they were blatant statements made to coach Mr. Haskins. Thus, these statements were improper. *Alzaturficio S.C.A.R.P.A., S.P.A. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33 (D. Mass. 2001).

As illustrated below, Mr. Haskins was obviously influenced by these statements, and therefore his testimony as to why the GPWS did not sound when it should have should be barred. The testimony at issue is as follows:

Mr. DeYoung: Now, let me ask you, in the few minutes we have remaining before we break for this part one of your deposition, the reason the GPWS system didn't give an

alert at the places that you said it should have, is there any part in your report where it says what the reason is?

The Witness: Yes.

Mr. DeYoung: Where?

The Witness: I think that is the second item in there. The second item discusses that.

Mr. DeYoung: Any other places besides item 2, or is that it?

The Witness: Item 2.

Mr. DeYoung: I am not trying to encourage you to have more, I certainly don't want you to. I just want to be certain I extract it.

Mr. Wisner: I want to make sure, too. I mean, Glenn, if your whole report goes to that---

Mr. DeYoung: Objection. I think this is coaching of the witness.

(Portions of draft of deposition transcript of Glenn Haskins, attached hereto as Exhibit A, p. 181:8 -182:3.)

Moments later, after Mr. Wisner made his improper speaking objection, Mr. Haskins changed his testimony and testified in response to the same question as follows:

The Witness: Item 2, item 3, item 4, I think discuss that, and, in general, you know item 5 goes toward the systematic disregard of standard practices. (Exhibit A, p. 182:16-19.)

Mr. Haskins first testified that the only reason the GPWS system did not give an alert at the places that it should have was the opinion in item 2 of his report. At that point, Mr. DeYoung gave Mr. Haskins the opportunity to add additional items as the bases for his opinions and <u>Mr. Haskins chose not to</u>. Only after Mr. Wisner

objected and mentioned Haskins' whole report did Mr. Haskins change his testimony to add additional items as the bases for why the GPWS did not give an alert. This speaking objection by Mr. Wisner blatantly influenced Mr. Haskins into changing his testimony. Mr. Wisner coached Mr. Haskins into referring to additional portions of his report. This was improper.

Moreover, Mr. Wisner did not state the basis for his objection. He did not say the question was improperly phrased or lacked foundation. Rather, he blurted out to Mr. Haskins by name that he wanted to make sure Mr. Haskins was referring to his whole report. This statement was obviously improper.

Furthermore, the effect of this objection was highly prejudicial to the defendant. Mr. Haskins was clearly influenced by Mr. Wisner's comments and changed his testimony about why the GPWS alert did not sound.

As the deposition continued, this topic was further discussed and plaintiffs' counsel further objected. This time, however, it was Mr. Hoff who improperly chimed in:

> Mr. DeYoung: Okay. In your listing of item 2, 3, and 4 – let's take 4, for instance. Are you actually saying that that occurred at the time of this flight and that's why—one of the reasons why the GPWS did not sound an alert and you think it should have? I don't mean you to read it and analyze it now, but you answered my question once already, and I want to be sure you understood the question. I am trying to extract from your report the actual failures that play a role in this occurrence, and that's what I am trying to finalize.
>
> The Witness: Yes, and are you asking me whether or not the mode switching design error—

Mr. DeYoung: Happened at the time of the accident, correct?

The Witness: --happened at the time of this accident.

(Exhibit A, p. 183:10- 184:4.)

* * *

The Witness: This is indicative of some of the process problems associated with the way that this system was developed. If what was stated in his memo is true, then the design associated with this box is faulty. This crash and the performance of the GPWC, certainly, as part of the GPWS, failed to provide a warning when it should have as a result of the faulty design that was put out by Sundstrand at that time. The most likely failure mechanism, the most systemic design problem is item 2. Item 4 may well have contributed.

Mr. Hoff: Is there more or is that your answer? Are you done?

Mr. DeYoung: I wouldn't encourage any more.

Mr. Hoff: I can't tell because he's thinking and—I didn't want him to step on your answer if you weren't done.

The Witness: I am done.

(Exhibit A, p. 184:21 – 185:15.) Again, plaintiffs' counsel improperly coached the witness which resulted in Mr. Haskins changing his testimony. Again, this is improper. For these reasons, Mr. Haskins' testimony on these areas should be barred.

WHEREFORE, Defendant HAMILTON SUNDSTRAND CORPORATION, respectfully requests that this Honorable Court bar the testimony of Glenn Haskins on the areas in which he was improperly coached.

Attorney for Defendant
HAMILTON SUNDSTRAND CORPORATION,
improperly sued as Sundstrand Corporation

WILLIAM F. DEYOUNG
LORETTO M. KENNEDY
HOLLAND & KNIGHT, LLC
55 West Monroe Street, Suite 800
Chicago, Illinois 60603
312/263-3600

CHI1 #202731 v1

STATE OF ILLINOIS)
) SS
COUNTY OF COOK )

AFFIDAVIT OF SERVICE

I, Mary Joan Gleeson, being duly sworn upon oath, state that I served the foregoing pleading by causing a copy of same to be hand delivered on January 27, 2003, addressed to:

Floyd A. Wisner, Esq.
Nolan Law Group
20 North Clark Street, 30th Floor
Chicago, IL 60602

Mary Joan Gleeson

SUBSCRIBED AND SWORN to
before me this 27th day
of January, 2003.

Laura L Cahill
Notary Public

"OFFICIAL SEAL"
LAURA L CAHILL
COMMISSION EXPIRES 03/01/04

CHI1 #178800 v1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LYNDA WILSON, as personal )
representative, et al., ) No. 99 C 6946
Plaintiffs, ) Consolidated
vs. ) Into
SUNDSTRAND CORPORATION, ) 99 C 6944
Defendant. )

The deposition of GLENN T. HASKINS, called for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, taken before ANNETTE M. MONTALVO, a Notary Public within and for the County of Lake, State of Illinois, and a Certified Shorthand Reporter of said state, at 33 West Monroe Street, Suite 2600, Chicago, Illinois, on the 11th day of January, A.D. 2003, at 11:30 a.m.



**EXHIBIT A**

PRESENT:

NOLAN LAW GROUP,
(20 North Clark Street, 30th Floor,
Chicago, Illinois 60602,
312-630-4000), by:
MR. JOHN S. HOFF and
MR. FLOYD A. WISNER,
appeared on behalf of the Plaintiffs;

HOLLAND & KNIGHT,
(33 West Monroe Street, Suite 2500,
Chicago, Illinois 60603,
312-422-9042), by:
MR. WILLIAM F. DeYOUNG and
MR. DAVID STREICKER,
appeared on behalf of the Defendant.

REPORTED BY: ANNETTE M. MONTALVO, C.S.R.,
Certificate No. 84-3967.

to know what's on your list still to be done. That's right.

Have we exhausted the list as far as you can recall today of things still to be done?

A. As far as I sit here today and can recall, yes.

Q. Thank you.

Now, let me ask you, in the few minutes we have remaining before we break for this part one of your deposition, the reason the GPWS system didn't give an alert at the places that you said it should have, is there any part in your report where it says what the reason is?

A. Yes.

Q. Where?

A. I think that is the second item in there. The second item discusses that.

Q. Any other places besides item 2, or is that it?

A. Item 2.

Q. I am not trying to encourage you to have more, I certainly don't want you to. I just want to be certain I extract it.

MR. WISNER: I want to make sure, too. I

EXHIBIT A

mean, Glenn, if your whole report goes to that --

MR. DeYOUNG: Objection. I think this is coaching of the witness.

MR. WISNER: I'm sorry. I don't want to coach him either.

MR. DeYOUNG: Let's just not even do this.

MR. WISNER: I want to make sure the witness understands the question.

MR. DeYOUNG: I don't want you to make sure anything about the witness. He can answer this question that is pending.

MR. WISNER: Let me note an objection, and I will let it go. Object to the form of the question.

BY THE WITNESS:

A. Item 2, item 3, item 4, I think discuss that, and, in general, you know, item 5 goes toward the systematic disregard of standard practices.

BY MR. DeYOUNG:

Q. Is there an item 5? I don't have an item 5.

A. It is the fifth one that's underlined, but it is not listed item 5. "Sundstrand Sub

Standard Design, Development and Manufacturing Process."

Q. That should really be an item 5, is that correct, in essence? The way you organized the report, should that really have a 5 in front of it?

A. You could certainly do that.

Q. Okay. Now, let me just here in the last few minutes go to this item 4.

In your listing of item 2, 3 and 4 -- let's take 4, for instance. Are you actually saying that that occurred at the time of this flight and that's why -- one of the reasons why the GPWS did not sound an alert and you think it should have? I don't mean you to read it and analyze it now, but you answered my question once already, and I want to be sure you understood the question.

I am trying to extract from your report the actual failures that play a role in this occurrence, and that's what I am trying to finalize.

A. Yes, and you are asking me whether or not the mode switching design error --

Q. Happened at the time of the accident, correct?

A. -- happened at the time of this accident.

And so I am going to read this and give myself a little bit of time to think about your question so I can properly give you an answer.

Q. Okay.

A. Is that all right?

Q. I understand now that you understand my question. Thank you.

(WHEREUPON, discussion was had off the record from 5:29 p.m. to 5:32 p.m.)

BY THE WITNESS:

A. Ask me the question again.

(WHEREUPON, the record was read by the reporter as requested.)

BY THE WITNESS:

A. This is indicative of some of the process problems associated with the way that this system was developed. If what was stated in his memo is true, then the design associated with

this box is faulty. This crash and the performance of the GPWC, certainly, as a part of the GPWS, failed to provide a warning when it should have as a result of the faulty design that was put out by Sundstrand at that time. The most likely failure mechanism, the most systemic design problem, is item 2. Item 4 may well have contributed.

MR. HOFF: Is there more or is that your answer? Are you done?

MR. DeYOUNG: I wouldn't encourage any more.

MR. HOFF: I can't tell because he's thinking and -- I didn't want him to step on your answer if you weren't done.

THE WITNESS: I am done.

MR. HOFF: It is just hard to tell.

BY MR. DeYOUNG:

Q. In that answer you mentioned 2 and 4.

Now, let me go to 3 for a second, item 3. Do you believe item 3 actually occurred -- the problem created by item 3 actually occurred and played a role in this accident with respect to the function of the GPWC or the GPWS?

A. I would give the same answer to item 3

that I just gave to item 4.

Q. Meaning it may very well have; is that a fair and quick summary?

A. I don't know.

Q. Okay. Well, the record has what you said.

A. Right.

Q. Is that fair in your -- to your ears to say that it may very well have; does that sound correct to you to say that?

A. I would have to -- I'd have to think about it. Summarizing things is kind of -- you know, it is very difficult to come up with the right words that relay this concept, and when you summarize something, it sort of detracts from what I'm trying to convey as honestly and straight forwardly as I can. And I am not trying to be disagreeable by saying that I don't know if that really represents what I am trying to say because I am trying to pick my words very carefully and be as honest and open about all this as I can, but at the same time not --

Q. All you have to say is yes or no if that's good.