## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6944 | **DATE** | 1/27/2003 |
| **CASE TITLE** | Wilson vs. Sundstrand | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached order, the Court grants plaintiffs' motion to strike defendant's motions for summary judgment. Defendant's motion for summary judgment as to the Indonesian plaintiffs' defendant's motion for summary judgment as to the German and Italian plaintiffs, and defendant's motion for summary judgment as to the German and Italian plaintiffs, and defendant's motion for summary judgment on Counts 3 and 4 are stricken. Defendant's motion for leave to file a brief in excess of 15 pages is denied as moot. Plaintiffs' motion for leave to file an amended complaint is granted in part. Third amended complaint is due 2/3/03; response 2/10/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 3 - 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 264 |
| | Copy to judge/magistrate judge. | | | |
| | OR | courtroom deputy's initials | U.S. DISTRICT COURT<br>03 JAN 27 PM 5:35<br>Date/time received in central Clerk's Office | date mailed notice<br>mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FEB 3 - 2003

| | |
|---|---|
| LINDA WILSON, et al., | )<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 99 C 6944 |
| SUNDSTRAND CORP., | ) |
| Defendant. | ) |
| HERRY ROSIDIN, et al., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 99 C 6946 |
| SUNDSTRAND CORP., | ) |
| Defendant. | ) |

FEB 3 - 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

These consolidated cases, which arise from the crash of a Garuda Airlines jet in Indonesia in September 1997, have been pending in this Court since October 1999, when defendants removed them from state court based on diversity of citizenship. On February 1, 2002, the Court set the case for trial on February 24, 2003; that date was recently continued by 14 days, to March 10, 2003. On October 2, 2002, the Court set a deadline of December 2, 2002 for filing any summary judgment motions. On December 2, plaintiffs filed a motion for summary judgment with regard to certain of

264

defendants' affirmative defenses. That same date, defendant filed a motion for summary judgment on plaintiffs' strict liability claims (Counts 1 and 2) based on the Illinois statute of limitations purportedly governing such claims. Both motions are currently under advisement.

In this memorandum opinion, the Court considers whether defendant should be permitted to file three additional, belated summary judgment motions and whether plaintiff should be permitted to file a third amended complaint.

## Defendant's new summary judgment motions

Defendant has filed three new summary judgment motions. Each was filed on January 17, 2003, over six weeks after the deadline for filing summary judgment motions had passed. The first motion seeks summary judgment on Counts 3 and 4 of the plaintiffs' complaints, which allege defendant's negligent design, manufacture, assembly, sale, or distribution of a ground proximity warning system (GPWS) that was purportedly installed on the airliner. In this motion, defendant argues that plaintiffs have no evidence that any GPWS device was on the aircraft; that assuming the aircraft had a GPWS, plaintiffs have no evidence that defendant manufactured it; that plaintiffs have no evidence that the GPWS system manufactured by defendant was negligently designed; that plaintiffs have no evidence that any GPWS that may have been on the aircraft was defective; and that plaintiffs have no evidence linking defendant's GPWS and the crash. In its second motion for summary judgment, defendant argues that certain of the plaintiffs, those representing deceased German and Italian passengers, lack capacity to maintain this lawsuit. In its third motion for summary judgment, defendant argues that the plaintiffs who represent deceased Indonesian passengers likewise lack capacity to maintain this action.

Plaintiffs have moved to strike each of defendant's newly-filed summary judgment motions on

the grounds that they were filed, without leave of court, after the deadline the Court had set. For the reasons stated below, the Court strikes each of defendant's motions as untimely.

1. **Defendant's arguments**

Defendant advances several reasons why it should be permitted to make the three summary judgment motions. First, defendant says that it had reason to believe that the Court would permit it to file such motions within one month of the close of fact discovery; it claims that because fact discovery was later extended past the original cutoff date of October 31, 2002, the motions are in effect timely. The Court disagrees. As an initial matter, we did not extend the fact discovery cutoff date. Rather, we permitted the parties to complete discovery that they had begun or had noticed prior to the cutoff date, with some limitations. In any event, defendant had no reasonable basis to believe that the summary judgment motion deadline was a floating date that automatically extended so long as some fact discovery was ongoing. On October 2, 2002, we set a fixed summary judgment motion deadline of December 2. Defendant (though given ample opportunity to do so at an extended argument on this and other subjects on January 22, 2003) has cited no rulings or statements by the Court since that time indicating that the deadline was flexible. Indeed, the contrary is true. On November 21, defendant suggested setting a "backup" date for a second round of summary judgment motions, but the Court declined to do so, stating that if defendant wished to seek permission to file further such motions after the deadline, it should advise the Court of this on December 2, and that Court would "decide whether [it was] going to deal with that or not." Transcript, Nov. 21, 2002, p. 13. But despite that specific admonition, defendant made no motion to extend the summary judgment deadline; rather it permitted the deadline to run and simply filed the present tardy motions after time had expired, without seeking

leave of court.

Defendant also cites comments that the Court made, long before setting the December 2 deadline, reflecting a general expectation that summary judgment motions would be due after fact discovery was completed. The short answer to this is that veritable oceans of water passed under the bridge after any such comments were made. Once the Court set a fixed deadline, as we did on October 2, 2002, defendant could not reasonably rely on any earlier general comments to draw the conclusion that the later-set fixed deadline was meaningless or even flexible. And even if counsel, albeit unreasonably, construed these earlier comments as suggestive of an intent to create a fluid deadline, it was incumbent on them to seek clarification when or after the Court later set a fixed deadline. They did not do so. Nuggets mined from the transcripts of prior status hearings provide no legitimate basis to ignore, or retroactively extend, the deadline the Court set on October 2.

Defendant also argues that the ongoing expert discovery, some of which bears on liability issues, warrants a retroactive extension of the summary judgment motion deadline. The Court disagrees. Any purported problem created by the pendency of expert disclosure and discovery following the December 2 deadline was well known to defendant before that date and could have been raised as part of a motion to extend the deadline before it ran. Because no separate expert discovery schedule was set by the Court or agreed upon by the parties, the default schedule in Federal Rule of Civil Procedure 26(b)(2)(C) was the operative schedule, and it was patently obvious that this schedule would extend beyond December 2, 2002. Moreover, this was or should have been obvious to defendant long before the summary judgment deadline; Rule 26(b)(2)(C) is crystal-clear about the

4

expert disclosure schedule that applies if the Court does not set its own.[1]

In a slight variation of this same argument, defendant argues that it would have made no sense to file its new summary judgment motions before obtaining discovery from plaintiffs' experts, because the full scope of plaintiffs' evidence was unknown. Thus had defendant filed its motions by the deadline, it would not have known all of the evidence it needed to address until plaintiffs responded to the motions, which, defendant says, would have left it without a fair opportunity to address that evidence. There are two short answers to this: this "problem," once again, was known to defendant before the deadline ran; and defendant's concern is no excuse for ignoring a specific and fixed deadline set by the Court. In any event, defendant's argument does not hold water. Its newly-filed summary judgment motion for summary judgment on Counts 3 and 4 (the only one of its three motions that addresses the sufficiency of plaintiffs' evidence on liability) could have been filed on December 2 in precisely the same form that it now takes: an argument that plaintiffs lack evidence on several critical points. If plaintiffs had pointed to some such evidence in responding to the motion, defendant would have had a full and fair opportunity to address it in its reply. This would have been in no way out of the ordinary; motions for summary judgment that essentially toss the ball into the plaintiff's court are common, and the Supreme Court specifically approved this practice in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The fact that defendant's counsel may have preferred, from a strategic standpoint, not to proceed in that manner is no basis for a contention that defendant lacked a fair opportunity to

---

[1] Even if defendant was somehow not focusing on Rule 26(b)(2)(C), the specifics of that Rule's expert discovery schedule were specifically discussed in open court in mid-November, yet as we have noted defendant made no motion to extend the summary judgment deadline, either before or after it passed.

seek summary judgment before the December 2 deadline. In sum, defendant's argument does not justify permitting late summary judgment motions.[2]

Having rejected defendant's arguments urging consideration of its late-filed motions, we review the particulars of the three motions at issue.

2. **Defendant's motion for summary judgment as to Counts 3 and 4**

As the Court has indicated, defendant has offered no legitimate reason why it did not file, or could not have filed, its motion for summary judgment as to Counts 3 and 4 by the December 2, 2002 deadline. The motion does not rely on any evidence discovered, obtained, or first learned of after that deadline. Rather, it relies on plaintiffs' alleged failure to produce any evidence that a GPWS manufactured by defendant was on the aircraft, that any GPWS on the aircraft was defective, or that the crash was caused by the GPWS system. As discussed earlier, this motion could have been filed in precisely this form on December 2.

3. **Defendant's motion for summary judgment as to Indonesian plaintiffs**

In its motion for summary judgment as to the Indonesian plaintiffs, defendant challenges the capacity of the plaintiffs to pursue this action. It also contends that the claims of the plaintiff/heirs who were added in the second amended complaint are time-barred.

This is the second time in this lawsuit that defendant has raised the issue of capacity. It filed a motion for summary judgment in March 2001; after extended and extensive briefing, the Court

---

[2] We note that this rationale would not excuse the late filing of defendant's two other motions challenging the plaintiffs' capacity to sue in any event, as those motions are based not on matters learned or even addressed in expert discovery but rather on matters learned or learnable by defendant long before the December 2 deadline.

6

ultimately denied it as to the Indonesian plaintiffs in March 2002.

The arguments made by defendant in the newly-filed motion were available to it, and could have been made, on or before the December 2 summary judgment motion deadline. Its statute of limitations argument could have been raised at any time after plaintiffs filed their second amended complaint (which named the new plaintiffs) on March 26, 2002, more than eight months before the December 2 deadline. Its renewed argument regarding capacity is primarily based on whether various Indonesian-language documents are sufficient to confer upon various plaintiffs the right to bring suit on behalf of the deceased Indonesian passengers. Defendant appears to have received these documents no later than March 2002. It has failed to provide a legitimate reason why it could not have made the motion before the deadline, even if these documents required translation. It is apparent from the earlier round of motions regarding capacity that defendant, like plaintiffs, has retained Indonesian counsel to advise it on these and other issues. Defendant's Indonesian counsel was on board well in advance of the December 2 deadline and could have been enlisted to obtain prompt translations and advise defendant on matters relating to the capacity issue.

4.  **Defendant's motion for summary judgment as to German and Italian plaintiffs**

Defendant's motion for summary judgment regarding the German and Italian plaintiffs likewise challenges their capacity to bring suit on behalf of the deceased German and Italian passengers. As with the Indonesian plaintiffs, defendant previously challenged the capacity of the German and Italian plaintiffs; the Court denied the motion in March 2002. Defendant's current motion purports to rely on "recent discovery and deposition testimony." Dfdt's Mem. in Support of Mot. for Summ. Judgt. as to German and Italian Pltfs., p. 3. But further examination reveals that defendant is relying on deposition

testimony given and documents produced in late August 2002 (with respect to the German plaintiffs) and early October 2002 (with respect to the Italian plaintiffs), well before the December 2 summary judgment motion deadline. *Id.*, pp. 4-5. Defendants have offered no legitimate reason why they could not have filed this motion on or before that deadline. As noted earlier, even assuming the need for translation of documents or depositions, this was an easily-predictable factor that defendant could have and should have accounted for in advance of the December 2 deadline.

**5.     Should the Court extend the dispositive motion deadline?**

The Court will not retroactively extend the dispositive motion deadline over six weeks after it expired. The case is set for trial on a date which was only eight weeks away when defendant filed its belated summary judgment motions. The Court previously ordered the parties to submit the final pretrial order by February 21, 2003 and set the final pretrial conference for March 3, 2003. Plaintiffs will soon have to begin (if they have not done so already) the process of preparing their initial draft of the final pretrial order, which our standing order requires them to submit to defendant 21 days before the final due date, that is, by February 1. Moreover, our standing order requires all motions *in limine* must be filed no later than two weeks before the final pretrial conference (i.e., by February 17), and responses to those motions must be filed one week later. In other words, there are significant, time-consuming tasks that the parties must accomplish between now and mid-February – in addition to preparing for the trial itself. Requiring the parties to brief three extensive summary judgment motions now would divert their attention from these other significant tasks and would force the Court into the very scenario that we intended to avoid when we set the summary judgment deadline: having to consider a raft of summary judgment motions in the final weeks before trial.

## 6. Conclusion

In sum, defendant could have and should have filed each of these motions on or before the deadline the Court had set. Plaintiffs would be unfairly prejudiced were the Court to allow these motions to be filed now, over six weeks after the deadline has passed; and the attention of the parties and the Court would be diverted from other important tasks that must be accomplished before the trial can begin on March 10. For these and the other reasons stated above, the Court strikes each of defendant's summary judgment motions.

In closing, the Court notes that the substance of defendant's motion for summary judgment on Counts 3 and 4 presumably can be presented to the Court at trial as part of a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 at the close of the plaintiffs' case and at the close of all the evidence. The Court expresses no opinion on whether the same is true of the arguments contained in defendant's newly-submitted motions regarding the plaintiffs' capacity to sue; it is not clear to the Court, and the parties have not yet addressed fully, whether and to what extent these matters must be proven at trial, or whether the issue of capacity is to be decided by the Court or the jury. Those questions are left for another day.

### Plaintiffs' motion for leave to file a third amended complaint

As indicated earlier, plaintiffs' second amended complaint was filed in late March 2002. That amendment added a number of plaintiffs to the case (mainly heirs of the deceased passengers) but made no substantive change to the allegations in the first amended complaint. The first amended complaint, filed in May 2001 in Case No. 99 C 6944 and in late April 2001 in Case No. 99 C 6946, likewise made no substantive change to plaintiffs' original complaint.

Plaintiffs now seek leave to file a third amended complaint. The proposed third amended complaint would eliminate a number of the parties plaintiffs added (all but the purported personal representatives of the estates of the deceased passengers); add a request for punitive damages; and "conform[ ] [plaintiffs'] allegations to the federal notice pleading requirements." *See* Pltfs' Mot. for Leave to File Am. Cplt., p. 3. Though plaintiffs did not explain the latter change in their motion, it involves the elimination of a listing of seven specific respects in which the GPWS was claimed to be defective, *see, e.g.,* Second Amended Complaint ¶5(a)-(g), in favor of a general allegation that the GPWS "was unreasonably dangerous, defective, and/or unfit for its intended use in that it contained unreasonably dangerous defects and conditions." *See* Proposed Third Amended Complaint, Count 1, ¶5.

Though Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires," a plaintiff does not have *carte blanche* to amend his complaint whenever and however he wishes. In particular, leave to amend may be denied if the proposed amendment was unduly delayed, was made in bad faith, or would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiffs' proposed punitive damages amendment comes very late in the day. Fact discovery is closed, trial is fast approaching, and the final pretrial order is due in less than one month. Plaintiffs contend that they only recently discovered evidence that gives rise to a punitive damages claim, but that is so only because plaintiffs back-loaded fact discovery, waiting until just a short period before the cutoff date to initiate the requests that they say hit pay dirt.

Permitting plaintiffs to add a punitive damages claim now, after discovery has closed and just

10

before trial, would unfairly prejudice defendant. None of the three versions of plaintiffs' complaint filed in the more than three years this case has been pending has included an allegation of willfulness or recklessness. And the new allegations that form the basis of the proposed punitive damages claim would necessarily require defendant to conduct discovery in order to have a fair chance to defend against that claim. Specifically, the proposed new claim includes allegations that defendant made representations about what the GPWS would do; that defendant knew these representations were incorrect; and that defendant failed to take appropriate action to correct known defects. *See* Proposed Third Amended Complaint, Count 5, ¶7. Defendant ordinarily would be entitled to conduct discovery to learn the basis for these allegations, but given the closure of discovery it would be unable to do so were we to grant leave to amend. It would be unfairly prejudicial to force defendant to try a claim whose particulars it has been unable to learn through discovery. Plaintiffs' motion is therefore denied insofar as it seeks to add a separate claim for punitive damages. *See, e.g., Park v. City of Chicago,* 297 F.3d 606, 613 (7th Cir. 2002) (delay plus unfair prejudice to defendant may justify denial of leave to amend); *Clay v. City of Chicago Department of Health,* 143 F.3d 1092, 1094 (7th Cir. 1998) (affirming denial of leave to amend to add a new theory of liability after discovery had closed).

By contrast, defendant would suffer no unfair prejudice from plaintiffs' proposed amendment to eliminate the allegation of seven specific ways in which the GPWS was allegedly defective. Plaintiffs' contention that they are making this amendment simply to conform the complaint, originally filed in Illinois state court, to federal notice-pleading standards does not hold water; if that was all plaintiffs wanted to do, they would have done it sometime in the previous three years that the cases have been pending in federal court. Rather, it is fairly obvious from the face of the proposed amendment that

11

plaintiffs seek to preserve the possibility of contending at trial that the GPWS was defective in other (or additional) ways besides the seven they had specifically listed, and even if that were not obvious from the amendment itself, plaintiffs' counsel confirmed exactly this at oral argument when questioned by the Court. But plaintiffs' delay in making this change does not mean that the Court must or should deny them leave to amend. Plaintiffs' claim that the GPWS was defective will go nowhere unless supported by evidence, and that evidence has come and will come almost entirely (if at all) from plaintiffs' expert witnesses. Thus practically speaking, it is the opinions of those experts, not plaintiffs' earlier versions of the complaint, that defendant has relied upon and will continue to rely upon to prepare its defense. When asked repeatedly at oral argument to describe any particular way in which defendant would be prejudiced if plaintiffs were allowed to amend to essentially conform their complaint to the experts' report, it could describe none. Defendant's primary response was that it feared that if given leave to amend the complaint, plaintiffs would next provide new and different expert opinions. That argument, though identifying a non-existent risk (the time for such disclosures has now run), confirms that it is the experts' opinions, not the complaint, that are critical to defendant being able to understand the basis of the claim of defect. Defendant already has those expert opinions in hand, and thus under the circumstances it will suffer no prejudice, let alone unfair prejudice, if plaintiffs are permitted to amend the complaint in this regard. For these reasons, plaintiffs' motion for leave to amend is granted with regard to this particular proposed change.

The final proposed amendment seeks to eliminate a number of plaintiffs, mainly those who were added in the second amended complaint filed in March 2002. At oral argument, defendant stated no objection to this proposed amendment other than that it was not necessary and could have been

12

handled in the final pretrial order. When the Court asked plaintiffs' counsel whether they really wanted to make this change in light of defendant's renewed desire to attack the plaintiffs' capacity, they asked for more time to make a final decision. If they wish to make the change, they have leave to do so. Plaintiffs are to make this decision within seven days and are to file on that date, February 3, 2003, their third amended complaint. Defendant is directed to file its response to the third amended complaint within seven days thereafter.

## Conclusion

For the reasons stated above, the Court grants plaintiffs' motion to strike defendant's motions for summary judgment. Defendant's motion for summary judgment as to the Indonesian plaintiffs, defendant's motion for summary judgment as to the German and Italian plaintiffs, and defendant's motion for summary judgment on Counts 3 and 4 are stricken. Defendant's motion for leave to file a brief in excess of 15 pages is denied as moot. Plaintiffs' motion for leave to file an amended complaint is granted in part and denied in part as stated above. Plaintiffs' third amended complaint (without proposed Count 5) is to be filed on or before February 3, 2003; defendant's responsive pleading is due by February 10, 2003.

							_____
							MATTHEW F. KENNELLY
							United States District Judge

Date:   January 27, 2003